# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JANICE PROCTOR COOPER,**

        **Plaintiff,**

**v.**                                              **Case No:   6:18-cv-1352-Orl-37LRH**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

Janice Proctor Cooper ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits.   Doc. 1.   Claimant raises two arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be remanded for further administrative proceedings.   Doc. No. 17, at 7–9, 11–13.   The Commissioner asserts that the decision of the Administrative Law Judge ("the ALJ") is supported by substantial evidence and should be affirmed.   *Id*. at 9–11, 14–17.   The undersigned **RESPECTFULLY RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner.

## I.    PROCEDURAL HISTORY.

On September 25, 2014, Claimant filed an application for disability insurance benefits.   She alleged that she became disabled on July 26, 2011.   R. 218.[1]   Her claim was denied initially and

_____

[1] The record contains a prior unfavorable decision denying Claimant's application for disability benefits on July 25, 2011.   R. 67–74.   The denial of that application is not at issue in this appeal.

on reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ").   R. 147–52, 154–63, 164–65.   A hearing was held before the ALJ on July 28, 2017, at which Claimant was represented by an attorney.   R. 32–49.   Claimant and a vocational expert ("VE") testified at the hearing.   *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.   R. 15–25.   Claimant sought review of the ALJ's decision by the Appeals Council.   R. 215–16, 217.   On July 9, 2018, the Appeals Council denied the request for review.   R. 1–7. Claimant now seeks review of the final decision of the Commissioner by this Court.   Doc. No. 1.

## II.   THE ALJ'S DECISION.

After consideration of the entire record, the ALJ found that Claimant met the insured status requirements of the Social Security Act through December 31, 2015.   R. 18.   The ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged disability onset date. *Id.*[2]   The ALJ found that Claimant had the following severe impairments: hepatitis C; herniated disc at L5-S1; osteoarthritis; carpal tunnel syndrome of right wrist; mild alcohol neurocognitive disorder; depressive disorder; anxiety disorder; personality disorder; schizophrenia; and polysubstance use disorder.   *Id.*   The ALJ concluded that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 18–20.

Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the social security regulations,[3]  except:

---

[2]  Although Claimant worked after the alleged disability onset date, the ALJ found that work did not rise to the level of substantial gainful activity, except during the second quarter of 2014.   R. 18.

[3]  The social security regulations define light work to include:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.   To be considered capable of

> [S]he must avoid concentrated exposure to humidity, vibration and extreme of heat and cold.  The claimant can frequently climb ramps and stairs, occasionally climb ladders, ropes and scaffolds.  The claimant can frequently balance, kneel, crouch, handle and finger with the dominant right upper extremity; and occasionally stoop and crawl.  The claimant can perform simple, routine tasks.

R. 20.   After considering the Claimant's RFC and the testimony of the VE, the ALJ concluded that Claimant was capable of performing past relevant work as a cleaner.  R. 24.  The ALJ found that this work does not require the performance of work-related activities precluded by Claimant's RFC.  *Id.*  The ALJ also found that in comparing Claimant's RFC with the physical and mental demands of the job, Claimant could perform the work of a cleaner as performed or as generally performed.  *Id.*  Accordingly, the ALJ concluded that Claimant was not disabled.  *Id.*

## III.    STANDARD OF REVIEW.

Claimant having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported

---

performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.    ANALYSIS.

In the Joint Memorandum, which I have reviewed, Claimant raises two assignments of error: (1) the ALJ erred at step three of the sequential evaluation process in determining that Claimant did not have an impairment or combination of impairments equal in severity to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (2) the ALJ erred at step four of the sequential evaluation process in finding that Claimant's past work as a cleaner qualified as past relevant work.   I will address each of these contentions in turn.

### A.    Step Three of the Sequential Evaluation Process.

An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

At step three of the sequential evaluation process, the Listing of Impairments describes each

major impairment considered severe enough to preclude a person from any gainful activity regardless of age, education, or prior work experience. *See* 20 C.F.R. § 404.1525(a). "Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment.

*Id.* (citations omitted). The claimant bears the burden of proving that her impairment meets or equals a listed impairment. *Nettles v. Astrue*, No. 3:09-CV-862-J-MCR, 2010 WL 3394666, at *5 (M.D. Fla. Aug. 26, 2010).

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria" and "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The claimant has the burden of presenting "specific medical findings that meet the various tests listed under the description of the applicable impairment," and the claimant must "(1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement." *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). "A diagnosis alone is insufficient." *Id.* (citing 20 C.F.R. § 416.925(c)–(d)).

Here, at step three of the sequential evaluation process, the ALJ concluded that Claimant's impairments, either singly or in combination, did not meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18. In making this finding, the ALJ

stated: "The claimant did not meet the criteria of listing 1.04, as she was able to ambulate within the meaning of listing 1.00B2b." *Id.*

Listing 1.04A provides:

**1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.[4]

Accordingly, "[t]o meet listing 1.04A, Plaintiff must establish (1) evidence of nerve root compression characterized by neuroanatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and (4) positive straight-leg raising test (sitting and supine)." *Harris v. Comm'r of Soc. Sec.*, No. 6:17-cv-622-Orl-41TBS, 2018 WL 3150246, at *3 (M.D. Fla. Apr. 18, 2018) (citation omitted), *report and recommendation adopted*, 2018 WL 3135997 (M.D. Fla. June 27, 2018). "[T]he medical criteria must be met for a period of twelve continuous months." *Castro v. Astrue*, No. 8:08-CV-769-T-33TGW, 2009 WL 1975513, at *4 (M.D. Fla. July 8, 2009).

Claimant contends that her lumbar spine impairment meets or medically equals the requirements of Listing 1.04A. She first argues that the ALJ erred in concluding that Listing 1.04A required that Claimant be unable to ambulate within the meaning of Listing 1.00B2b, which defines

---

[4]   *Available at*   https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_04.

the "inability to ambulate effectively."  Doc. No. 17, at 9.   Courts have reached different conclusions on this issue.[5]   In this case, however, it is unnecessary for the Court to reach the issue of whether Listing 1.04A requires an inability to ambulate within the meaning of Listing 1.00B2b because Claimant has not demonstrated that she meets all of the essential severity criteria for Listing 1.04A.   *See Nettles*, 2010 WL 3394666, at *6 (noting that the claimant must demonstrate the existence of every symptom in Listing 1.04A).

Claimant argues that various medical tests, procedures, and diagnoses described in the record support a finding that her impairment meets the Listing.  Doc. No. 17, at 7–9.  The undersigned agrees that Claimant presented evidence to the ALJ sufficient to establish a qualifying disorder of the spine under Listing 1.04A.  Specifically, Claimant points to an MRI of the lumbar spine from November 29, 2015.  *See* R. 794–95.  That record demonstrates: (1) grade I spondylolisthesis at LS-S1; (2) disc bulging at L1-2, L2-3, L3-4 and L4-5; (3) broad-based posterior disk herniation and associated radial tear at L5-S 1; (4) spinal stenosis at L3-4; and (5) neural encroachment from L2-3 through LS-S1; and (5) impingement upon the bilateral S1 nerve roots, right more so than left.   R. 795.  However, this is but one of the factors that must be present in order to satisfy Listing 1.04A.

---

[5] *Compare, e.g.*, *Leibig v. Barnhart*, 243 F. App'x 699, 702 (3rd Cir. 2007) (finding that Listing 1.04A "requires an inability to ambulate effectively or an inability to perform fine and gross movements effectively."), *Rouse v. Astrue*, No. 8:08-CV-2281-T-23TBM, 2010 WL 457320, at *5 n.5 (M.D. Fla. Feb. 4, 2010) ("[A] claimant must also demonstrate an inability to ambulate effectively.   This criteria is not set forth in listing 1.04.   Rather, it is factor to be considered under all of the Musculoskeletal System Listings . . . ."), *and DeCoito v. Astrue*, No. 1:07-cv-0330-SEB-TAB, 2008 WL 906164, at *3 (S.D. Ind. Mar. 31, 2008) (finding that Listing 1.04A "requires, in part, a finding that the claimant has an inability to ambulate effectively"), *with Jarrette v. Colvin*, No. 10-C-5778, 2014 WL 1560331, at *12 (N.D. Ill. Apr. 18, 2014) ("While a claimant's ability to 'ambulate effectively' is a relevant issue for listing 1.04 'C'—and is defined by listing 1.00B(2)(b)—effective ambulation has no bearing on whether a claimant satisfies listing 1.04 'A.'"), *Taylor v. Colvin*, No. 12-CV-412-FHM, 2013 WL 4544262, at *2 n.3 (N.D. Okla. Aug. 27, 2013) ("The court rejects the Commissioner's assertion that Plaintiff was required to demonstrate an inability to ambulate effectively to meet Listing § 1.04A."), *and Laplume v. Astrue*, No. 08-cv-476-PB, 2009 WL 2242680, *5 (D.N.H. July 24, 2009) ("[T]he inability to ambulate effectively is not a requirement of section 1.04A.").

Next, the undersigned agrees that the Claimant presented some evidence that she suffered limitation of motion of the spine, another factor required for satisfying Listing 1.04A.  *See* R. 471, 684–85.   The first cited record is from June 2013, which indicates decreased range of motion of the lumbar spine, although it also indicates full range of motion of the cervical spine, as well as normal gait and posture.  R. 471.   The second record is from April 2015, which also documents decreased range of motion of Claimant's lumbar spine; however, the record also states that Claimant had normal range of motion of the cervical spine and normal posture and gait.  R. 684–85.  Claimant cites no other records in support, but the undersigned will presume for purposes of this case that decreased limitation of the lumbar spine is sufficient to satisfy that requirement of Listing 1.04A.  However, this is where Claimant's argument fails as she has not met the remaining requirements of the Listing.

Specifically, Claimant contends that the record demonstrates evidence of nerve root compression characterized by neuro-anatomic distribution of pain,[6] citing a diagnosis of radiculopathy[7] from Dr. Laurence Skolnik, M.D., who treated Claimant for her back issues.  *See* R. 450, 472, 537.   However, the records on which Claimant relies are mostly illegible handwritten treatment notes, and the undersigned is unable to verify whether these records support a finding of nerve root compression characterized by neuro-anatomic distribution of pain.  *See id.*  Even assuming a diagnosis of radiculopathy could be indicative of general nerve root compression, *see, e.g.*, *Smith v. Astrue*, No. 09-C-6210, 2011 WL 722539, at *11 (N.D. Ill. Feb. 22, 2011) ("chronic radiculopathy" was "indicative of nerve root compression"), Claimant does not point to any

---

[6] "Nerve root compression results in a specific neuro-anatomic distribution of symptoms and signs depending upon the nerve root(s) compromised."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00K1.

[7] "Radiculopathy" is defined as "irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root."   *Radiculopathy,*  Merriam–Webster  Dictionary,  http://www.merriam-webster.com/dictionary/radiculopathy (last visited June 27, 2019).

additional record evidence that would indicate that such nerve root compression was characterized by neuroanatomic distribution of pain.  "Courts have generally found that if a plaintiff contends that the impairment meets a listed impairment, the claimant must 'present specific medical findings that meet the various tests listed under the description of the applicable impairment.'"  *Smith v. Astrue*, No. 8:10-CV-262-T-17AEP, 2011 WL 843969, at *12 (M.D. Fla. Feb. 18, 2011) (citing *Wilkinson*, 847 F.2d at 662), *report and recommendation adopted sub nom. Smith v. Comm'r of Soc. Sec.*, 2011 WL 843544 (M.D. Fla. Mar. 8, 2011).

In addition, the undersigned has not located record evidence demonstrating "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," another requirement of Listing 1.04A.  To the contrary, the record evidence indicates that Claimant did not have motor loss accompanied by sensory or reflex loss.  *See, e.g.*, R. 356 (no focal deficits); R. 471 (sensory intact); R. 684 (no motor deficit); R. 685 (sensation intact); R. 685 (2/4 reflex, but with 5/5 muscle strength, intact sensation, and no motor deficit); R. 693 (motor "grossly within normal limits").[8]

Moreover, Claimant cites to record evidence of positive straight leg raise tests, although she admits that those test results do not specify whether the tests were conducted in sitting or supine positions.  *See* R. 519, 647, 685.[9]  To meet listing 1.04A, Claimant must demonstrate both.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A (emphasis added) (requiring "positive straight-leg raising test (sitting *and* supine)"); *see also Miller v. Astrue*, No. 2:09-cv-650-FtM-DNF, 2011 WL

---

[8] Claimant's arguments on this point are inconsistent.  On the one hand, she points to one of Dr. Skolnik's treatment notes which states "[s]ensory deficit hallux longus bilateral."  Doc. No. 17, at 8; *see* R. 684.  On the other hand, she also seems to admit that there is insufficient record evidence because counsel was "unable to determine whether or not Dr. Skolnik's records document any motor loss accompanied by sensory or reflex loss as some of his handwritten records are illegible."  Doc. No. 17, at 8.

[9] The record also contains at least one negative straight leg raise test.  *See* R. 443.

1598731, at *5 (M.D. Fla. Apr. 28, 2011) (finding positive supine straight leg raise test accompanied by negative straight leg raise test in sitting position insufficient to satisfy Listing 1.04A); *Chipps v. Comm'r of Soc. Sec.*, No. CV 14-11194, 2015 WL 5093379, at *3 (E.D. Mich. Aug. 5, 2015), *report and recommendation adopted*, 2015 WL 5093783 (E.D. Mich. Aug. 28, 2015) ("[L]isting 1.04A requires positive straight-leg raising tests from *both* the supine and sitting positions.").

Thus, as the Commissioner argues, the evidence on which Claimant relies is insufficient to satisfy all of the criteria for Listing 1.04A.  Even assuming that the evidence sufficiently demonstrates limitation in motion of the spine, the evidence does not clearly demonstrate nerve root compression characterized by neuro-anatomic distribution of pain, motor loss with sensory or reflex loss, and positive straight leg raise testing in both the sitting and supine positions.  "While Plaintiff's back . . . undoubtedly impairs [her] physical functioning to a great degree, the evidence upon which [she] relies simply is insufficient to demonstrate that the requirements of listing 1.04A are met."  *Rouse*, 2010 WL 457320, at *5; *see also Smith*, 2011 WL 843969, at *13 ("Even though the Plaintiff presented some evidence demonstrating aspects of listing 1.04(A), '[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" (quoting *Sullivan*, 493 U.S. at 530)).  Accordingly, I recommend that the Court reject Claimant's first assignment of error that the ALJ erred in finding that her impairments did not meet the criteria of Listing 1.04A.

B.     Step Four of the Sequential Evaluation Process—Past Relevant Work.

At step four of the sequential evaluation process, the ALJ must determine the claimant's RFC and ability to perform past relevant work.  *Phillips*, 357 F.3d at 1238. A claimant is not disabled if he or she is capable of performing past relevant work, which is defined as work done within the last fifteen years constituting substantial gainful activity that lasted long enough for the

claimant to learn the work.  *See* 20 C.F.R. § 404.1560(b)(1); *see also Eyre v. Comm'r of Soc. Sec.*, 586 F. App'x 521, 523–24 (11th Cir. 2014) (per curiam).[10]  The claimant bears the burden of demonstrating that prior work experience was not "past relevant work."  *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991) ("[T]he claimant has the burden of showing that certain work experience is not past relevant work.").

Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572.  Work activity is substantial if it "involves doing significant physical or mental activities," and is gainful if it is done "for pay or profit."  20 C.F.R. § 404.1572(a).  The primary consideration in determining whether prior work was substantial gainful activity is earnings from that prior work.  *Id.* § 404.1574(a)(1).  "The ALJ ordinarily will consider that the claimant either was or was not engaged in substantial gainful activity if her average monthly earnings are above or below a certain amount established by the Social Security Administration's earnings guidelines."  *Eyre*, 586 F. App'x at 524 (citations omitted).  However, earnings are not dispositive. *See id.* ("[T]he ALJ can consider other information, including whether the work performed was 'comparable to that of unimpaired people in [the claimant's] community who [were] doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work.'" (citing 20 C.F.R. §§ 404.1574(a)(1), (b)(3)(ii)(A), 416.974(a)(1), (b)(3)(ii)(A))).

Claimant contends that the ALJ failed to provide sufficient analysis to support a finding that

---

[10] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority.  *See* 11th Cir. R. 36–2.  The relevant fifteen-year period usually includes the fifteen years prior to the date of the ALJ's decision, or the last date that the claimant was under disability insured status, whichever comes first.  *See* 20 C.F.R. § 404.1565(a).  "The 15–year time-frame is advisory in nature, and its purpose is to ensure that the ALJ does not use an outdated job description in his determination of whether the claimant can perform her past relevant work."  *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 952 (11th Cir. 2010).  The ALJ found that Claimant's date of last insured was December 31, 2015, R. 18, and Claimant does not challenge that finding here.

Claimant's prior position as a cleaner was performed at substantial gainful activity levels and constituted past relevant work.  Doc. No. 17, at 12.  To the contrary, Claimant contends that the record is insufficient to demonstrate that her prior work as a cleaner constituted past relevant work— her earnings records fail to demonstrate that she performed this work at substantial gainful activity levels; and the ALJ did not question Claimant at the hearing regarding what years she worked as a cleaner, for how long, or how much money she earned from that position.  *Id.* at 12–13.  Notably, Claimant does not argue that her position as a cleaner did not involve significant physical or mental activities or that it was not done for pay or profit, *see* 20 C.F.R. § 404.1572; instead, she only contends that her earnings may have been performed at less than substantial gainful activity levels. Doc. No. 17, at 13.

As an initial matter, the Commissioner correctly notes that Claimant did not raise this issue to the ALJ, nor did her attorney object to the VE's testimony identifying Claimant's prior work as a cleaner as past relevant work.  As such, the ALJ was not obligated to specifically address the concerns that Claimant now raises before this Court.  *See, e.g.*, *New v. Comm'r of Soc. Sec.*, No. 5:12-cv-211-Oc-18PRL, 2013 WL 3804846, at *3 (M.D. Fla. July 8, 2013) (collecting cases and stating that because Claimant failed to raise this issue before the ALJ or object to the VE's testimony regarding Claimant's past relevant work, "the ALJ was not obligated to specifically address the concerns—or rather, arguments—that [Claimant] now raises); *Whittemore v. Comm'r of Soc. Sec.*, No. 3:09-CV-1242-J-MCR, 2011 WL 722966, at *5 (M.D. Fla. Feb. 23, 2011) (finding that "the ALJ was not required to specifically discuss his reasons for concluding Plaintiff's past work as a real estate agent qualifies as substantial gainful activity" because the plaintiff had not raised the issue to the ALJ or objected to the VE's work summary); *see also Baker v. Berryhill*, No. 1:17-CV-217-MW-GRJ, 2018 WL 3056699, at *8 (N.D. Fla. June 1, 2018), *report and recommendation*

*adopted*, 2018 WL 3056671 (N.D. Fla. June 20, 2018) ("Neither Plaintiff nor her attorney ever suggested that her work as a cashier might not be past relevant work.   Thus, to the extent this could be considered error Plaintiff essentially invited any error about whether her work as a cashier constituted past relevant work.").   Accordingly, because Claimant had the burden of proving that her position as a cleaner did not qualify as past relevant work, *see Barnes*, 932 F.2d at 1359, I recommend the Court find that she failed to carry that burden here.[11]

Moreover, substantial record evidence supports the ALJ's conclusion that Claimant's prior work as a cleaner constituted past relevant work.   The record includes a Work History Report, in which Claimant states that she had worked as a day laborer since 1978.   R. 297, 299.   In that job, she cleaned, mopped, swept offices, and dumped trash; she reportedly worked 4 hours per day, 5 days per week, and she was paid $8.50 per hour.   *Id.*   A report prepared after consultative examination at the reconsideration level also states that Claimant worked as a day laborer cleaning offices from 1978 through 2011.   R. 116.   Claimant's earnings records are available in the record; the records provide the employer, dates, and annual amount of pay received from employment, although those records do not delineate the type of work Claimant performed at each place of employment.   *See* R. 245–48, 251–54; 256–60.[12]

Claimant notes that her highest year of earnings in the past fifteen years was 2007, in which she earned a total of $11,298.09.   *See* R. 252, 260.   The monthly substantial gainful activity

---

[11] In written argument to the Appeals Counsel in support of the request for review of the ALJ's decision, Claimant likewise did not raise the issue of her prior relevant work as a cleaner.   *See* R. 215–16.

[12] Taking the representations in the Work History Report to their logical conclusion, Claimant would have earned approximately $8,840.00 per year ($8.50/hour x 4 hours/day x 5 days/week x 52 weeks/year). That would approximate to $736.67 per month.   This would constitute substantial gainful activity alone through the year 2000.   *See* Social Security Administration, Substantial Gainful Activity, *available at* https://www.ssa.gov/oact/cola/sga.html (last visited June 27, 2019).   However, the representations in the Work History Report do not match Claimant's earning records with some years below and some years above that amount.

amount in 2007 was $900.00 per month.   *See* Social Security Administration, Substantial Gainful Activity, *available at* https://www.ssa.gov/oact/cola/sga.html (last visited June 27, 2019). [13] Claimant notes that the earnings records from 2007 include work performed for three different companies—02HR, LLC, Workers Temporary Staffing, Inc., and Daytona International Speedway, LLC—and she contends that the record does not identify which portion of the work in 2007 Claimant performed as a cleaner.   Doc. No. 17, at 13.   Again, Claimant did not present evidence on this issue at the hearing before the ALJ.   "[T]he burden is on the claimant to show that she is disabled and, therefore, she is responsible for producing evidence to support her application." *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006); *see also Barnes*, 932 F.2d at 1359 (finding record supported reasonable conclusion that the claimant could perform past relevant work, which was "bolstered by the fact that the claimant bears the initial burden of proving that she is unable to perform her previous work").   Thus, even though Claimant's average monthly earnings from her work as a cleaner could have been below the amount established by the Social Security guidelines for certain years, Claimant's failure to raise this issue before the ALJ or develop the record on this issue is fatal to her argument here.   *See Schlegel v. Comm'r of Soc. Sec.*, No. 6:16-cv-1236-Orl-DCI, 2017 WL 2379811, at *2 (M.D. Fla. June 1, 2017); *see also O'Neal v. Astrue*, No. 8:06-CV-1960-T-TGW, 2008 WL 705248, at *4 (M.D. Fla. Mar. 14, 2008) ("The plaintiff states that the earnings for 1996–97 "may or may not reach the level of substantial gainful activity[.]   That contention is insufficient because of the plaintiff's burden to show that she cannot return to past work.").[14]

---

[13]   "[A] claimant's average monthly earnings while doing prior work is calculated by averaging the claimant's earnings over the actual period of work involved, not over the entire year."   *Schlegel v. Comm'r of Soc. Sec.*, No. 6:16-cv-1236-Orl-DCI, 2017 WL 2379811, at *2 (M.D. Fla. June 1, 2017).   The record does not provide Claimant's monthly earnings in 2007, only the annual figure.   Assuming Claimant worked all twelve months, her average monthly earnings in 2007 would have been approximately $941.51.

[14]   I also note that the ALJ specifically asked counsel for Plaintiff whether any additional exhibits

Finally, in concluding that Claimant's prior work as a cleaner constituted past relevant work, the ALJ relied on the testimony of the VE, without objection by Claimant's counsel.   At the hearing before the ALJ, the VE stated that she had reviewed the exhibits from Claimant's file made available to her before the hearing.   R. 46.   The VE testified that the record reflected Claimant's prior relevant work as a cleaner, which is unskilled work that the Dictionary of Occupational Titles (DOT) classifies as light work with a specific vocational preparation (SVP) level of two.   R. 47.   The VE confirmed that a person with Claimant's RFC could perform the position of cleaner.   *Id.*   "An ALJ may rely on a VE's testimony regarding the demands of a plaintiff's past relevant work and the plaintiff's ability to perform her past relevant work."   *New*, 2013 WL 3804846, at *5 (citing 20 C.F.R. § 416.960(b)(2); *Savor v. Shalala*, 868 F. Supp. 1363, 1365 (M.D. Fla. 1994)); *see also Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise."). "Because an ALJ may properly consider information in the DOT and a VE's testimony in determining whether a claimant can still perform her past relevant work, there was substantial evidence to support the ALJ's decision as to this issue in this case."   *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010).   Accordingly, I recommend that the Court reject Claimant's second assignment of error that the ALJ erred in finding that her prior work as a cleaner constituted past relevant work.

---

needed to be placed into evidence or whether counsel had any objections to the exhibits contained in the record.   R. 35.   Counsel responded "no" to both inquiries.   *Id.*   "The ALJ can hardly be faulted for failing to further develop the evidence given Plaintiff's representation that the record was complete."   *See, e.g., Colon v. Comm'r of Soc. Sec.*, No. 6:17-cv-133-Orl-22TBS, 2018 WL 636039, at *3 (M.D. Fla. Jan. 12, 2018), *report and recommendation adopted*, 2018 WL 623669 (M.D. Fla. Jan. 30, 2018) (citing *Williams v. Comm'r, Soc. Sec. Admin.*, 703 F. App'x 780, 783 (11th Cir. 2017)); *see also McCray v. Massanari*, 175 F. Supp. 2d 1329, 1340 n.9 (M.D. Ala. 2001) (internal citation omitted) ("While the ALJ is required to fully develop the record before ruling on claims of disability, [he] is under no duty to go to inordinate lengths to develop a claimant's case." (quoting *Thompson v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977))).

## V.     RECOMMENDATION.

Upon consideration of the foregoing, it is **RESPECTFULLY RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED**.   It is further **RECOMMENDED** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 28, 2019.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy